**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TERENCE J. ALOST,

     Plaintiff,

v.

                             No. 2:24-cv-00893-SMD-KRS

STEVEN ACOSTA,

     Defendant.

**MEMORANDUM ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendant Steven Acosta ("Defendant")'s motion to dismiss, Doc. 10, supplemental motion to dismiss, Doc. 13, and motion to strike, Doc. 19. Upon review of the parties' briefing and the relevant law, the Court will GRANT Defendant's motion to dismiss and DENY Defendant's motion to strike. Defendant's motion for a hearing, Doc. 23, is DENIED as moot.

**BACKGROUND**

I.    Factual Background

The following recitation of facts is based on Plaintiff's complaint, Doc. 1 ("Compl."), and amended complaint, Doc. 16 ("Am. Compl.").[1] Because Plaintiff is proceeding pro se, his complaint is "held to less string standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). The Court not only draws all reasonable inferences in Plaintiff's favor, but liberally construes the facts and any documents attached to the complaint as exhibits. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

---

[1] Plaintiff's amended complaint does not incorporate all the facts set forth in the initial complaint and the Court relies on both documents in discerning the events that led to this suit.

Plaintiff Terence J. Alost ("Plaintiff") is an emergency medicine physician who resides in Louisiana and is a board-certified member of the American Board of Emergency Medicine. Compl. at 3–4 ¶ A.[2]  On April 28, 2024, Plaintiff and his wife were in a tragic tandem bicycling accident in Zion National Park.  *Id.* at 4 ¶¶ A, 11 ¶ 10(c)(i); *see also* Doc. 1, Ex. 1.  Plaintiff's wife passed away a few days later.  Compl. at 4 ¶ A, 12 ¶ 11(c)(i).  Shortly after his wife's passing, Plaintiff began working on a contract-basis for Memorial Medical Center ("MMC") in Las Cruces, New Mexico, through TeamHealth, a contract management group that staffs the Emergency Department at Memorial.  *Id.* at 6 ¶ 5.

A few months into his role at MMC, supervisors began to express their concern about Plaintiff's wellbeing.  On August 29, 2024 Kelley Evans, an HR representative from TeamHealth, emailed Plaintiff and asked to schedule time to meet over Zoom.  *Id.* at 8 ¶¶ 9(c)(i)–(ii).  Plaintiff did not see the email.  *Id.* ¶¶ 9(c)(iii).  Evans followed up via text.  *Id.*  Plaintiff explained that he was slammed for the next ten days.  *Id.* ¶ 9(c)(iv).  Evans then offered a few other dates to meet, none of which were feasible for Plaintiff.  *Id.* ¶¶ 9 (c)(vi)–(xxiv).  The same day, Defendant Steven Acosta ("Defendant"), a physician who worked with Plaintiff at MMC, called Plaintiff.  Doc. 16, Ex. 3.  Plaintiff did not pick up.  *Id.*  Defendant called again on August 30th and left a voicemail. *Id.*  Defendant also texted Plaintiff and requested a ten- to fifteen-minute call.  Doc. 16, Ex. 6. Plaintiff responded that he was not free at that time because he had a variety of chores and was designing his late wife's tombstone.  *Id.*  Defendant expressed his condolences, but insisted that the conversation could not wait.  *Id.*  Plaintiff reiterated that it would be "impossible" to talk that day. *Id.*  Defendant offered text or email communication as an alternative.  *Id.*  Plaintiff stated that he would prefer an email.  *Id.*  Defendant then sent the following email to Plaintiff and copied

---

[2] Because Plaintiff does not uniformly label the paragraphs in his filings, the Court cites to the page number and paragraph for clarity.

three other TeamHealth employees—Dr. Ann Buchanan, Laura Saenz, and Corrine Duarte. Compl. at 6 ¶ 8. Ann Buchanan is the Regional Medical Director for TeamHealth. Doc. 16, Ex. 18. Laura Saenz works in the TeamHealth human resources department. Am. Compl. at 13. Corrine Duarte is Vice President of Operations at TeamHealth. *Id.* This email, which constitutes the entirety[3] of Plaintiff's defamation and false light claims, is reprinted in full below.[4]

> Hello Terence,
>
> I wanted to touch base with you about some concerns that, to date, you've been unavailable to discuss via phone.
>
> [Statement 1] Please note that at the time of this email, Kelley Evans reached out and tried to schedule a conference call with Dr. Ann Buchanan, RMD, and Corrine Duarte, VPO for TeamHealth, and you declined to provide any availability for a phone call.
>
> [Statement 2] I have attempted to call you multiple times on September 29 and September 30. I left you a voicemail indicating my need to talk to you, and you have not returned any calls.
>
> [Statement 3] In addition, I texted you on September 29, to which you responded. I sent additional texts on both September 29 and 30. On September 30, you indicated that it was impossible to have a phone call, because you had too much to do.
>
> Therefore, in accordance with your agreement via text, I am emailing this information. I am happy to discuss this with you via phone call as you are able.
>
> [Statement 4] At this time we have great concern about your emotional and mental well being. I have been contacted by a number of colleagues, with whom you communicate, indicating that you dont [sic] seem to be yourself. In addition, some are expressing concerns about your overall well being, given what you are sharing via text. My concern is that this is impacting your ability to manage your clinical responsibilities, as evidenced by the number of complaints from patients,

---

[3] Although Plaintiff alludes to "other occasions" which "will show the extent to which [Defendant] committed libel, slander and false light," he does not substantiate these accusations with further facts. Am. Compl. at 2 ¶ 6. The Court cannot imbue the pleadings with its own conjectures. *Baker v. Navient Sols., LLC*, No. 1:19-cv-00501-RB-JFR, 2020 WL 365057, at *3 (D.N.M., 2020) ("The Court can give pro se plaintiffs the benefit of the doubt, but it cannot retroactively construct a narrative and fill in factual gaps to fix conclusory statements.").

[4] For clarity, the Court has labeled each alleged defamatory statement in accordance with Plaintiff's complaint and added paragraph breaks to separate statements where necessary. No other alterations have been made.

colleagues, and nursing staff, and expressions of concern from colleagues and staff that you have been on shift with.

[Statement 5] So, at this time I feel it best to bring this to your attention and recommend you seek some emotional/mental health evaluation and treatment as indicated.  As I mentioned previously, I was concerned you might be returning to work too soon, and it certainly feels that way at this time.

[Statement 6] From your own text to me, you've indicated that you are grieving and after your concussion, you are not quite yourself.

[Statement 7] We have removed you from your shifts in September and October, so that you can take all the time necessary to address your mental health needs.  Laura Saenz, who I've copied on this email, from TeamHealth human resources, will be sending follow up emails with resources available from TeamHealth to help you find the assistance you need.

[Statement 8] Terence, please know that so many of our ER colleagues have reached out and expressed their utmost sympathy for the horrible tragedy and loss you have endured.  It is our hope that you will take this time to self assess and get any help you might need to get through this remarkably difficult period.

As I mentioned, if you would like to discuss any of this by phone, when you have time, please feel free to reach out.

I would appreciate it, if you could provide a quick response to confirm you have received this email.

Per Defendant's email, Plaintiff was removed from his remaining shifts at MMC.  Compl. 1 at 6 ¶ 4.  Plaintiff sued Defendant for defamation on September 6, 2024.  *Id.* at 1 ¶ 20; Am. Compl. at 1 ¶ 3(i).  MMC terminated its contract with Plaintiff on September 9, 2024.  Doc. 16, Ex. 18.

II.    Procedural Background

Plaintiff alleges that Defendant "created the e-mail to intentionally give the impression that [Plaintiff] was somehow compromised and unable to perform his duties as a specialist in Emergency Medicine."  Am. Compl. at 2 ¶ 6.  He further avers that Defendant "made multiple false statements" and caused immediate and future financial loss, as well as damage to Plaintiff's medical career and mental anguish.  *Id.* at 10 ¶¶ 18 (i)–(iv).  Plaintiff seeks $53,400 for his terminated shifts, emotional damages, work-related travel expenses, $1,200,000 in future lost

wages, and punitive damages.  *Id.* at 11 ¶ 20.

Defendant filed a motion to dismiss, Doc. 10 ("Def.'s Mot. to Dismiss"), and a supplemental brief related to that motion, Doc. 13 ("Def.'s Supp. Br.").  Plaintiff did not directly respond to Defendant's motion, but filed an amended complaint reasserting his claim for defamation and bringing a new claim for false light.  Am. Compl. at 1 ¶ 3(iii).  Plaintiff's false light claim accuses Defendant of "insinuating that [his] healthcare provision was defective" and making "many non-specific statements that would cause any reasonable person to believe that [his] medical care was defective."  *Id.* at 11 ¶¶ 19(i)-(ii).  Plaintiff believes Defendant's conduct was "calculated, premeditated and malicious."  *Id.* ¶ 19(iv).  Defendant moved to strike Plaintiff's amended complaint as untimely under Federal Rule of Civil Procedure 15.  Doc. 19 at 2.  The Court denies Defendant's request.  Although the deadline for plaintiffs to amend their complaint once "as a matter of course" is 21 days after service, courts are to "freely give" leave to amend beyond that period.  Fed. R. Civ. P. 15(b).  Given that Plaintiff is proceeding pro se and the amended complaint does not affect the disposition of Defendant's motion, the Court will consider Plaintiff's amended complaint.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendant also asks the Court to dismiss Plaintiff's suit based solely on Plaintiff's failure to respond to Defendant's motion.  Def.'s Supp. Br. at 2.  "Plaintiff's failure to respond to Defendant's motion serves as a waiver of the arguments raised therein and a general failure to prosecute his claim.  Irrespective of Dr. Alost's pro se status, Defendant's motion should be granted in light of Plaintiff's failure to respond to the same."  *Id.*  The Court rejects Defendant's request as it contravenes Tenth Circuit precedent; "[a] district court may not grant a 12(b)(6) dismissal based solely on the plaintiff's failure to respond."  *Persik v. Manpower Inc.*, 85 F. App'x 127, 130 (10th Cir. 2003) (citing *Issa v. Comp USA*, 354 F.3d 1174, No. 04-4024, 2003 WL 23010402 (10th Cir.

Dec. 24, 2003)).  The Court will therefore evaluate Plaintiff's claims on the merits.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679.  This Court must therefore determine whether, accepting all well-pled factual allegations and attached exhibits as true, Plaintiff has plausibly stated a claim for defamation and/or false light under New Mexico law.  *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1228 (10th Cir. 1987) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.").

## DISCUSSION

The Court finds that none of Defendant's statements, read in the context of the e-mail, support a claim for defamation or false light.  The Court therefore GRANTS Defendant's motion to dismiss.

I.     The Court Dismisses Plaintiff's Claim for False Light.

The essence of the tort of false light is the placing of another "in a false light in the public eye." *Moore v. Sun Publ'g Corp.*, 881 P.2d 735, 743 (N.M. Ct. App. 1994) ("The essence of [false light], a close cousin of defamation, is the placing of another 'in a false light in the public eye.'"); *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1200 (D. Utah 2024) ("The key differences between

false light and defamation are that false light requires that information be publicized 'more widely' than is required for defamation, and that false light requires 'highly offensive,' but not necessarily defamatory, statements.").  In full, the tort is defined as "being given unreasonable and highly objectionable publicity that attributes him characteristics, conducts, or beliefs that are false, and is placed before the public in a false position."  *Id.* (quoting Restatement (Second) of Torts § 652E(b)).

There is no evidence that Defendant's statements placed Plaintiff in disrepute before the public.  Defendant's email was only sent to three other individuals, all of whom were employees of TeamHealth or MMC.  *See* Am. Compl. at 12; *cf. Andrews v. Stallings*, 892 P.2d 611, 626 (N.M. Ct. App. 1995) ("Because the tort requires 'publicity,' the report to the IRS and investigation of or reports regarding Plaintiffs' insurance do not qualify.").  An internal communication among coworkers is simply not far-reaching enough to fulfill the "public eye" requirement.  *Compare McLaughlin v. Bd. of Regents*, 566 F. Supp. 3d 1204, 1217 (W.D. Okla. 2021) (finding statements were not actionable for false light because they were "limited to team meetings or other small meetings with university personnel"), *with Goldstein v. Hindle*, Civ. Action No. GLR-21-03124, 2024 WL 473736, at *4 (D. Md. Feb. 7, 2024) (finding that statement posted on Facebook was actionable for false light because the website was "open to the public at large").  Plaintiff's false light claim thus fails as a matter of law.

II.     The Court Dismisses Plaintiff's Claim for Defamation.

A.   Defamation in New Mexico

In New Mexico, the elements of defamation are: (1) a defamatory communication; (2) published by the defendant; (3) to a third person; (4) of an asserted fact; (5) of and concerning the plaintiff; and (6) proximately causing actual injury to the plaintiff.  *Newberry v. Allied Stores, Inc.*,

773 P.2d 1231, 1236 (N.M. 1989). "The primary basis of an action for libel or defamation is contained in the damage that results from the destruction of or harm to that most personal and prized acquisition, one's reputation." *Fikes v. Furst*, 81 P.3d 545, 549 (N.M. 2003) (quoting *Gruschus v. Curtis Publ'g Co.*, 342 F.2d 775, 776 (10th Cir.1965)). The parties do not dispute that Defendant's email was published by him, sent to third parties, i.e. anyone other than the defamed individual, and concerned the Plaintiff. Accordingly, the Court limits its analysis to the remaining three elements—whether the statements had a defamatory meaning, asserted false facts, and caused an injury.

Whether statements are capable of a defamatory meaning is initially a question of law for the district court. *Moore*, 881 P.2d at 742. "A statement is not defamatory merely because it is unflattering of the plaintiff." *Ormrod v. Hubbard Broad., Inc.*, No. CV 17-0706 JB/KK, 2018 WL 1444857, at *10 (D.N.M. Mar. 22, 2018). Defamation requires more; the statement must "expose the plaintiff to contempt, to harm the plaintiff's reputation, or to discourage others from associating or dealing with the plaintiff." *Heyward v. Credit Union Times*, 913 F. Supp. 2d 1165, 1189 (D.N.M. 2012); *Bookout v. Griffin*, 639 P.2d 1190, 1193 (N.M. 1982). This analysis is not conducted in isolation. Rather, the court looks to the "immediate context of the statement," as well as "the broader social context into which the statement fits." *Fikes*, 81 P.3d at 608. Statements that are not defamatory in their "plain and obvious meaning" may still be actionable for defamation where they are "susceptible of two reasonable interpretations, one of which is defamatory and another which is innocent, or . . . are not on their face defamatory, but which may become so when considered in connection with innuendos and explanatory circumstances." *Id.*; *see, e.g.*, *Fikes*, 81 P.3d at 551 (discussing professional critique and explaining that "statements that may appear in isolation to be defamatory may in fact be particularly appropriate or acceptable criticism when

made in an academic setting"). If the statement "could be susceptible of a defamatory meaning as well as innocent one, a question of fact is presented for the jury[.]" *Id.* at 740.

New Mexico courts have generally held that statements regarding an employee's personality are constitutionally protected expressions of opinion, whereas commentary on their professional knowledge or skill are defamatory. *Leyba v. Renger*, 874 F. Supp. 1218, 1221 (D.N.M. 1994). For example, false statements that a physician had "'substandard and inadequate skill levels,' posed an 'immediate threat to health and safety'" were defamatory "when there [had] never been a final finding made by an expert, the Board, the MEC, or the FHC that, in fact, Plaintiff fell below the standard of care." *Osuagwu v. Gila Reg'l Med. Ctr.*, 938 F. Supp. 2d 1180, 1198 (D.N.M. 2013). Courts have also found that statements suggesting an employee was fired for theft, *Lare v. Supreme Maint. Inc.*, No. 1:22-CV-00007-WJ, 2022 WL 13821774, at *9 (D.N.M. Oct. 21, 2022), or illicit drug use are defamatory. *Garcia v. Aerotherm Corp.*, 202 F.3d 281 (10th Cir. 1999) (unpublished table decision). Contrastingly, criticism of an employee's managerial style or leadership skills have been found to be constitutionally protected opinions. *Heyward*, 913 F. Supp. 2d at 1194 (finding that statements that plaintiff had a "cowboy style of leadership" and "desired to make a big splash" were opinions and therefore not defamatory); *Newberry*, 773 P.2d at 1237 (employer saying "I don't trust you" to employee was "an expression of opinion and not a statement of existing fact").

Next, even if a statement is injurious to the plaintiff's reputation, it will not qualify as defamation unless it asserts a fact. *Mendoza v. Gallup Indep. Co.*, 764 P.2d 492, 494 (N.M. Ct. App. 1988) ("An action for defamation lies only for false statements of fact and not for statements of opinion."). An expression of opinion is unequivocally protected under the First Amendment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974). The purported fact must also be false,

as truth is a complete defense to a defamation claim. *Jaramillo v. Gonzales*, 50 P.3d 554, 562 (N.M. Ct. App. 2002); *Mendoza*, 764 P.2d at 494. "In resolving the distinction between fact and opinion, the trial court should consider: (1) the entirety of the publication; (2) the extent that the truth or falsity of the statement may be determined without resort to speculation; and (3) whether reasonably prudent persons reading the publication would consider the statement to be an expression of opinion or a statement of fact." *Mendoza*, 764 P.2d at 494. A statement "couched" as an opinion may still be defamatory if it insinuates the existence of "undisclosed defamatory facts." *Heyward*, 913 F. Supp. 2d at 1190. The Supreme Court has clarified that "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified." *Masson v. New Yorker Mag.*, 501 U.S. 496, 516 (1991); *see also Franklin v. Blank*, 525 P.2d 945, 948 (N.M. Ct. App. 1974) ("Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance, and it is sufficient to show that the imputation is substantially true." (citation omitted)) (abrogated on other grounds by statute).

At the motion to dismiss stage, the Court "may find that the statements are not actionable as factual assertions only if, when well-pleaded allegations are taken as true, and construed in a light most favorable to [Plaintiff], and drawing all inferences about the statements in his favor, the Court concludes that the statements are unambiguously opinions." *Heyward*, 913 F. Supp. 2d at 1191–92; *Moore*, 881 P.2d at 742 (stating that the threshold question is "whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion"). New Mexico uses "verifiability as the controlling element" in determining whether a statement is fact or opinion. *Moore*, 881 P.2d at 741. If the court concludes "that a particular statement is 'opinion,'" that statement is "absolutely nonactionable." *Id.* (quoting Rodney A. Smolla, Law of Defamation § 4.05[1], at 4–17 (1994)).

Lastly, the Plaintiff must plead some injury to his reputation to allege defamation. New Mexico has abandoned the doctrine of presumed damages in defamation cases. *Smith v. Durden*, 276 P.3d 943, 950 (N.M. 2012). Thus, plaintiffs must demonstrate an injury which is the proximate result of the defendant's defamatory statement. *Id.* at 951; *Newberry*, 773 P.2d at 1236 (defamation must proximately cause actual injury to plaintiff). Emotional injuries, without an attendant reputational harm, are insufficient. *Smith,* 276 P.3d at 949. Whether defendant's conduct proximately caused that injury is typically "a question of fact to be determined by the factfinder." *Lerma v. State Highway Dep't*, 877 P.2d 1085, 1088 (N.M. 1994). The exception is "when facts regarding causation are undisputed and all reasonable inferences therefrom are plain, consistent and uncontradictory." *Id.* (citation omitted).

B. Defendant's Statements

Plaintiff has not pled sufficient facts to make out a claim for defamation as to any of Defendant's statements. Plaintiff concedes that Statement Five is Defendant's "opinion and it is protected by the First Amendment to the Constitution," Am. Compl. at 31 ¶ 25(i), and that Statement Seven does not "fit the requirements of either defamation or false light," *id.* ¶ 27(i). The Court now explains why the remaining six statements fail.

1. *Statements One, Two and Three are not defamatory because they are not materially false.*

Statement One claims that, at the time the email was sent, Evans had reached out and attempted to schedule a phone call, but that Plaintiff "declined to provide any availability." Am. Compl. at 13 ¶ 21. Accepting as true Plaintiff's primary contention, that he "never declined to prove availability," but "agreed to any type of meeting when [he] returned the following week," *Id.* at 15 ¶ 21(v), Statement One reflects, at most, "minor inaccuracies." *Masson*, 501 U.S. at 516. Plaintiff agrees that he "repeatedly stated that [he] would be unavailable for anything [on August

30th].ʺ  Am Compl. at 15 ¶ 21(vi).  The attached texts between Evans and Plaintiff negate the characterization of Defendantʹs statement as ʺlies.ʺ  *See* Doc. 16, Exs. 2–2B.  Evans asked whether Plaintiff was available for a Zoom meeting on August 30th at 12 pm, to which Plaintiff said he was not.  Doc. 16, Ex. 2.  Evans then pressed whether there was ʺanyway [Plaintiff] [could] do 30 mins or less tomorrow.ʺ  Doc. 16, Ex. 2A.  Plaintiff rebuked this offer as well; ʺthere is simply no time.  I donʹt have enough time for the things I need to do, not even close.ʺ  Doc. 16, Ex. 2B.  Again, Evans asks if ʺthere [was] any way [Plaintiff] [could] spare 20‐30 mins 8/30 tomorrow.ʺ  Doc. 16, Ex. C.  Plaintiff initially appeared amenable to a call before 1 pm, but when Evans attempted to confirm a meeting for August 30th at 1 PM, Plaintiff reversed his position.  *See* Doc. 16, Ex. B (responding to Evans that Plaintiff ʺjust canʹt tomorrowʺ).  The Court therefore finds that, read in context, Defendantʹs email accurately states that TeamHealth was unable to set up a call for August 30th and explains why the communication was instead made via email.  *See Heyward*, 913 F. Supp. 2d at 1208 (granting motion to dismiss on statement because it was not ʺfalse in a material wayʺ).

Statements Two and Three suffer from similar deficiencies—they are not materially false nor are they defamatory.  Plaintiff complains that Defendant lied because (1) the email was sent on August 30 and Defendant could not have called or texted Plaintiff on September 29th and 30th without ʺsome type of time travelling device,ʺ Am Compl. at 16 ¶ 22, and (2) Defendant did not call him ʺmultiple timesʺ on either date, *id.*  First, the Court finds that Defendantʹs reference to the September dates is an obvious typo—Plaintiff admits that Defendant called on August 29th and 30th, Am. Compl. at 16 ¶ 22(iii)—and not a material falsehood.  As explained above, this error does not amount to defamation.  Moreover, no reasonable individual would conclude that Defendant was inculpating Plaintiff for failing to answer texts on dates not yet passed.  *Mendoza*, 764 P.2d at 494 (action for defamation cannot be sustained where ʺthe recipients of his words did

not understand those words to have a defamatory meaning"); Am. Compl. at 17 ¶ 23(i) (advancing

that a statement "about texts . . . at a future date" is "ridiculous").

 Plaintiff insists that Defendant's use of "multiple times" insinuates that Defendant called

multiple times in one day, *id.* ¶ 22(ii), when in reality he called twice on two different days.  Such

trivialities do not amount to lies.  Defendant's email truthfully states that he called Plaintiff more

than once, *id.* ¶ 22 (iii) (admitting that Defendant called Plaintiff "two times").  Measured against

Plaintiff's recount and his attached exhibits, Statements One, Two, and Three accurately convey

communications between Plaintiff and TeamHealth and are not defamatory.

> 2. <u>Statement Four is not actionable because it reflects an opinion and is not defamatory
> in nature.</u>

Plaintiff characterizes Statement Four as "a very complicated paragraph which includes a

mixture of many vague statements, his opinion and innuendoes."  Am Compl. at 18 ¶ 24(i).

Plaintiff then identifies a singular alleged defamatory clause—Defendant's explication that he was

concerned about Plaintiff's "ability to manage [his] clinical responsibilities" because of complaints

from "patients, colleagues, and nursing staff."  *Id.* ¶ 24(v).  Plaintiff argues that although

Defendant's concern as to his clinical abilities appears to be an opinion, it can be disproven through

productivity data.  The Court disagrees.  The boundary between opinion and fact is "elusive,"

*Young v. Wilham*, 406 P.3d 988, 996 (N.M. Ct. App. 2017), but the Court finds that whether

Defendant believed Plaintiff was adequately performing his duties is a matter of opinion.

A statement asserts a fact if the statement "susceptible of being proved true or false."

*Heyward*, 913 F. Supp. 2d at 1186.  To "disprove" Defendant's statement, Plaintiff attached

productivity data to demonstrate that he was "one of the most productive physicians in the

department."  Am. Compl. at 25 ¶ 24(v)(2).  But Defendant did not portray Plaintiff as

unproductive; he expressed worry about managing responsibilities.  Such concern may arise from

a physician seeing too many patients and stretching themselves thin just as it may arise from a physician failing to provide care or being absent from work.  The submitted data does not undermine this belief.  Defendant's opinion about whether Plaintiff's clinical tasks were "managed" well may "convey a negative opinion," but it is not a "provably false factual assertion." *Moore*, 881 P.2d at 742; *see also Heyward*, 913 F. Supp. 2d at 1193 ("Particular management styles or skills, and leadership abilities, are matters of opinion and not capable of being proved true or false.") (citing *Mangan v. Corp. Synergies Grp.*, 834 F. Supp. 2d 199, 205 (D.N.J. 2011) (finding that statements that a company "had lost faith in Plaintiff's leadership ability and his management skills and that Plaintiff had left the company because he was not performing his job" were opinions)).

Nor did Defendant's statement rely on undisclosed false assertions of fact.  *See Heyward*, 913 F. Supp. 2d at 1190.  Regarding the referenced complaints, Plaintiff at first contends that there were no "complaints from patients'," only "complaints *about* patients." Am. Compl. at 24 ¶ 24(3). Plaintiff then immediately shifts to blaming Defendant for crediting the complaints rather than disputing their existence.  Plaintiff concedes there were at least two complaints related to the performance of his medical duties.  He details one complaint which was made by a healthcare trainee who "claimed that because [Plaintiff] did not listen to her the patient became septic and died." *Id.*  A second complaint was "brought by the mother of a patient who had a single bone mid-shaft forearm fracture." *Id.* at 28(g).  Plaintiff then opines that, "[n]either complaint was a legitimate complaint" and "Defendant knew or should have known that both complaints were illegitimate." *Id.* at 25 ¶¶ 24(3)(c)-(e).  Although Plaintiff vehemently disagrees with the conclusion Defendant drew from these complaints, that conclusion is a constitutionally protected opinion rather than a falsely asserted fact. *See Young*, 406 P.3d at 998 (finding that defendant's

14

description of plaintiff as a "wannabe cop" was "pure opinion" where underlying facts were disclosed). Any discrepancy between the complaints coming directly from patients as opposed to their relatives or coworkers on the patient's behalf is immaterial.

    *3. Statement Six is not actionable because it is an opinion and not defamatory in nature.*

Plaintiff avers that Statement Six is a lie because he "never texted Defendant about grief or sorrow" and "never texted Defendant that [he] was 'not [him]self.'" Am. Compl. at 33 ¶ 26(i)(1). Again, the veracity of these statements favors Defendant. Plaintiff indeed texted Defendant that it was "not a good time," that he was busy designing his wife's tombstone, and that he had a variety of "other chores not quite as stressful." *Id.* at 34 ¶¶ 26(i)-(ii); Doc. 16, Ex. 6. What Defendant surmised from these texts is an opinion. *Young*, 406 P.3d at 996 (affirming dismissal of defamation claim where "no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related"). Further, saying that someone doesn't seem to be quite themselves, or that they are grieving, does not "render the party about whom it is published contemptible or ridiculous in public estimation." *Bookout v*, 639 P.2d at 1193; *Ormrod*, 2018 WL 1444857, at *10. There is no reasonable interpretation of Statement Six as defamatory; it does not threaten Plaintiff's reputation, nor does not it render him "contemptible." *Fikes*, 81 P.3d at 549 ("Thus, no matter how opprobrious a defendant's statement may be, a plaintiff is not entitled to recover damages unless he or she can show that it caused an injury to reputation.").

    *4. Statement Eight is not actionable because it is not false, not defamatory, and does not concern Plaintiff's character or ability to perform his work.*

Lastly, Plaintiff nitpicks that other department colleagues never expressed their "utmost sympathy;" they merely "express[ed] their condolences with statements such as, 'I am sorry for your loss.'" Am. Compl. at 37 ¶ 28(ii). This is not a material falsehood and, more importantly, is not defamatory. It is a statement regarding what other people have said and has no bearing on

Plaintiff's reputation.  Statement Eight is therefore inactionable.

### C.  Injury and Proximate Causation

Although Plaintiff has failed to state a claim for defamation, the Court addresses the question of injury because as it is raised in Defendant's motion.  *See* Def.'s Mot. to Dismiss at 8 ("Plaintiff has failed to demonstrate any actual injury from the alleged defamatory email.").  The Court agrees with Defendant that Plaintiff's initial complaint draws a tenuous line between the alleged defamatory statements and the alleged injury.  For instance, Plaintiff seeks $60,000 in lost wages and costs for his lost September and October shifts.  Compl. at 2 ¶ 1.  Plaintiff believes that his removal from the schedule "sparked intense gossip within the hospital." *Id.* at 3 ¶ 2.  Plaintiff's version of events fails to establish a causal link between the email and his removal from the schedule.  Indeed, Defendant's email cannot have spurred Plaintiff's removal because it informed him of that decision; it did not precede it.  Plaintiff does not plausibly relate his lost wages from September and October to Defendant's email.  *Cf. Newberry*, 773 P.2d at 1236 (defamation must proximately cause actual injury to plaintiff).  This allegation presents one of the rare instances where, as a matter of law, proximate cause is impossible and can be determined as a matter of law.

Plaintiff also asks for $1,200,000 in wages from lost future employment.  Compl. at 3 ¶ 3; Am. Compl. at 11 ¶ 20(iii).  The factual record cannot sustain this demand.  Plaintiff hypothesizes that Defendant's communication "may very well have ended [his] career."  Compl. at 3 ¶ 3.  But a claim for lost earnings must at least sketch a line between the defendant's misconduct and the plaintiff's employment prospects.  In *Bookout*, the New Mexico Supreme Court affirmed that a plaintiff was not entitled to lost earnings following alleged defamatory letter where the record was "devoid of any showing that these possible employers knew of the letter or its contents or that the refusal to hire [plaintiff] was in any way related to the contents of the letter."  639 P.2d at 1193.

Likewise, Plaintiff does not allege that Defendant's email was circulated to other employers, that he has been rejected from other positions, or that he has been unable to obtain employment since his termination.

However, the Court finds Defendant's argument that Plaintiff's suit should be dismissed for lack of injury to be misplaced following the amended complaint. TeamHealth terminated Plaintiff *after* Defendant sent the email and after Plaintiff filed suit. *Compare* Compl. at 1 (filed September 6, 2024), *with* Doc. 16, Ex. 18 (termination of contract sent September 9, 2024). In the amended complaint, Plaintiff asserts that "[t]hey were convinced by his defamatory statements and false light that I was a liability instead of an asset. Humiliating me and terminating me, therefore, was reasonable secondary to Defendant's false light." Am. Compl. at 36 ¶ 27(iii)(5). Plaintiff reiterates that his termination was the "direct result of the actions taken by Defendant." *Id.* ¶ 29. Defendant does not address this factual development in his motion to strike. *See* Doc. 19. Although it is unclear who "they are," the Court finds that a under the liberal construction pro se plaintiffs enjoy, the stated facts permit for the reasonable inference that Defendant's email influenced Plaintiff's termination. Dismissing this suit for lack of causation or actual injury would thus be inappropriate, as any linkage between Defendant's email and TeamHealth's decision should be left to a jury. *Lerma*, 877 P.2d at 1088.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's suit is dismissed WITH PREJUDICE.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**